IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| JAMES G. SMITH, JR., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. 2:04cv356 |
| DONALD L. EVANS, in his | : | |
| capacity as Secretary of | : | |
| the United States | : | |
| Department of Commerce, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION and ORDER**

This administrative appeal is before the Court on the parties' Cross Motions for Summary Judgment. (Docket Nos. 8 & 10). For the reasons stated below, the Motions are **DENIED** and the action is **REMANDED** to the National Oceanic and Atmospheric Administration ("NOAA") for reconsideration in accordance with this Opinion.

I. Factual and Procedural History

Plaintiff James G. Smith ("Smith") was the Captain of the MISS CLARA, a federally permitted scallop vessel. At all relevant times, the MISS CLARA was owned by CLARA MW, Inc. (Initial Decision at 3, ¶1).[1] The corporation was in turn owned

---

[1] Initial Decision issued by the National Oceanic and Atmospheric Administration, No. NE010093, Jan. 29, 2003. (Docket No. 11, Ex. 3) (hereinafter referred to as "Initial Decision").

1

and managed by Leroy and Courtney Whorton.

On February 28, 2001 the MISS CLARA was scallop fishing off the Coast of New Jersey, slightly north of an off-limits area known as the Hudson Canyon South Closed Area ("Closed Area"). (Initial Decision, at 6).  The MISS CLARA's nets became caught on the bottom, causing the vessel to pull to the side and hang in one place.  (*Id.*).  At the time, the MISS CLARA's entire crew was asleep so Captain Smith awoke two of them for help.  With the assistance of the two crew-members, Captain Smith began re-winding the fishing nets in order to free the vessel.  (*Id.*). The crew also spent approximately thirty minutes repairing a chain that broke loose from one of the nets.  (*Id.*).  While all of this took place, plaintiff was not paying attention to the plotter and lost track of his position relative to the Closed Area boundary.  (*Id.*).

Once the MISS CLARA reset its nets, Captain Smith noticed a message from the National Marine Fisheries Service on the Vessel Monitoring System[2] ("VMS") stating "MISS CLARA, you're in a closed area."  (*Id.*).  Captain Smith thereafter turned the vessel around and exited the Closed Area in a reciprocal path.  (*Id.* at 7).  Later that morning, the Coast Guard boarded the MISS CLARA and observed illegal chaffing gear on the top portions of its

---

[2] The MISS CLARA's Vessel Monitoring System provided real time vessel position data to the National Marine Fisheries Service. (Initial Decision, at 4-5).

nets.  (*Id.* at 8).

On December 20, 2001, NOAA issued a Notice of Violation and Assessment of Administrative Penalty ("NOVA") to Captain Smith and MW CLARA, Inc.  The NOVA charged three counts:

**Count I:**  use of nets with chaffing gear that extended over the top portion in violation of 50 C.F.R. § 648.51(a)(3)(i);

**Count II:**  entering and unlawfully fishing in a Closed Area in violation of 50 C.F.R. § 648.14(a)(110); and

**Count III:**  (charged against plaintiff only)  -- Making a false statement in violation of 50 C.F.R. § 600.725(I).

(Docket No. 11, Ex. 1).

CLARA MW, Inc., its principals and a related business faced two additional assessments at the time NOAA issued the December 20, 2001 NOVA.  On September 19, 2002, CLARA MW, Inc. and its principals entered into a global settlement agreement with NOAA that encompassed all three of the pending NOVA's.  (Docket No. 11, Ex. 4).  Under the terms of the settlement, CLARA MW, Inc. and its principals agreed to pay a $100,000 fine, sell three fishing vessels, and not participate in the fishing industry for three years.  In exchange, NOAA agreed to dismiss the charges under all three NOVAs.

The settling parties memorialized their agreement in a formal, signed writing. The portions of the Settlement Agreement relevant to this appeal read as follows:

1. Respondents admit the violations alleged in the Notices issued in NE010093FM/V, NE010121FM/V, NE990259FM/V and agree not to contest the matters and waive their right to a hearing. NOAA hereby dismisses the charge in Count I in NE010093FM/V F/V MISS CLARA, against Leroy Whorton ONLY; *the charges related to the above-referenced count remain against Clara M.W., Inc. and James Smith, Jr.*
   . . . .
7. NOAA shall accept the respondents' admissions, waiver of hearing, service of sanction time, sale of vessels and permit histories and payment *as full settlement of all claims, charges, and complaints by the United States arising from the violation described in the NOTICE*, EXCEPT THAT the payment of the compromise amount and the signing of this agreement does not remove from the respondents the requirement to pay any suspended penalties agreed to under any prior settlement agreements. . .

(Docket No. 11, Ex. 4)(emphasis added).

Once the parties finalized their settlement, NOAA proceeded against Captain Smith as to Counts I and II of the NOVA.[3] After a one day evidentiary proceeding, an Administrative Law Judge imposed a total penalty of $95,000 against Captain Smith; $35,000 for the Closed Area incursion and $60,000 for the use of illegal chaffing gear. (Initial Decision, at 15). This appeal followed.

## II.  Standard of Review

The fines imposed on Captain Smith are subject to judicial review in accordance with the Administrative Procedure Act

---

[3] NOAA voluntarily dismissed Count III of the NOVA.

("APA"), 5 U.S.C. §§ 701 *et seq.* "Under the APA, a reviewing court may set aside agency action that it finds to be in excess of the agency's statutory jurisdiction or authority; without observance of procedures required by law; or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Shanty Town Assocs. Ltd. P'ship v. E.P.A.*, 843 F.2d 782, 789 (4th Cir. 1988) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-17 (1971)).

When presented with an appeal of an agency decision, the District Court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."[4] 5 U.S.C. § 706. However, the Court may not substitute the agency's judgment with factual determinations of its own. *See Shanty Town Assocs. Ltd. P'ship*, 843 F.2d at 795. Instead, "the court must engage in a 'substantial inquiry' into the agency's decisionmaking process, to determine 'whether [its] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 794 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416) (alteration in original).

---

[4] The reviewing court has the discretion to review extra-record information. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).

### III.  Analysis

Captain Smith contends that he is a third-party beneficiary of the Settlement Agreement and further contends that the document released him from any liability for the charges in the December 20, 2001 NOVA.  His contention rests on NOAA's specialized rules regarding the release of jointly charged parties.

In settlements of civil cases involving jointly and severally liable wrongdoers, "[t]he straightforward rule is that a party releases only those other parties whom he intends to release."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347 (1971).  When NOAA settles proposed penalties, however, different rules apply.  "Unless the Government <u>clearly</u> reserves a cause of action against other jointly and severally liable parties, a settlement agreement with the release of one joint and several party has the effect of releasing all joint and several parties."  *In the Matter of James Mattson, Esq.*, 4 O.R.W. 202, 1985 NOAA LEXIS 41, *10 (1985)(Emphasis added).  Plaintiff argues that the Settlement Agreement's release provisions are ambiguous and that this ambiguity necessarily means that NOAA did not "clearly" reserve its charge against Captain Smith.

A writing is ambiguous if it is "'sucseptible of two reasonable interpretations.'"  *Id.* (citing *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)).  The ALJ ruled that the Settlement Agreement

was unambiguous, stating "the agreement expressly provides,'the charges related to the above referenced count remain against . . . James Smith Jr.'" (Initial Decision, at 10-11).  The Court concludes that this ruling must be reversed because it is not in accordance with the law.[5]

It is well established that "[c]ontract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage." *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993).  Paragraph 1 of the Settlement Agreement purports to reserve certain charges against Captain Smith and CLARA MW, Inc.  However, Paragraph 7 works a general accord and satisfaction of "all claims, charges, and complaints" in the three NOVAs.  The ambiguity arises when paragraph 1 is read in light of the general release.  For example, Paragraph 1 reserves only the charges in Count I, not Count II.  Additionally, paragraph 1 purports to reserve charges against CLARA MW, Inc. as well as Captain Smith.  Since CLARA MW, Inc. is paying the fine, agreeing to sell three vessels, and agreeing to refrain from conducting business for three years, it is illogical to conclude that this was the true intent of the parties.

The Settlement Agreement is thus susceptible to at least

---

[5] The determination whether a contract provision is ambiguous presents a question of law, not of fact.  *See World-Wide Rights Ltd. P'ship*, 955 F.2d at 245.

three plausible interpretations of the parties' intent: 1) the parties intended to reserve only Count I against both CLARA MW, Inc. and Captain Smith; or 2) the parties intended to reserve only Count I against only Captain Smith and erroneously included CLARA MW, Inc. in the reservation clause; or 3) the parties intended to reserve both Counts I and II against Captain Smith, but erroneously ommitted Count II and erroneously included CLARA MW, Inc. in the reservation clause.  There are additional plausible readings; however, three are more than adequate to demonstrate ambiguity.

That the Settlement Agreement is ambiguous does not mean that the charges against Captain Smith automatically were released.[6]  The requirement that NOAA "clearly" reserve claims against a jointly liable party does not authorize a game of "gotcha" in construing negotiated documents.  The ambiguities in the Sttlement Agreement could be the product of scrivener error or even intentional design.  The Court still must discern and apply the intent of the parties.

"[T]he construction of ambiguous [agreement] provisions is a factual determination," *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992), and the ALJ at NOAA is the trier of fact.  *See Hays v. Sullivan*, 907 F.2d 1453,

---

[6] Captain Smith also challenges the fines as excessive.  While the fines initially strike the Court as heavy, no ruling on the fines is necessary unless NOAA first establishes that it may proceed against Captain Smith in the first place.

1457 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence").  However, the record does not contain any evidence of the parties intent.  Without an evidentiary hearing and access to witnesses, it is impossible to determine: (1) exactly what the parties intended to reserve from the general release; and (2) if NOAA intended to reserve charges against Captain Smith, whether its intentions were made clear in the parties' negotiations.

The matter is hereby **REMANDED** to NOAA for the ALJ to construe the ambiguous Settlement Agreement.  In doing so, the ALJ shall consider extrinsic evidence "to make the meaning of the instrument plain," but may not use the extrinsic evidence "to contradict or vary the written agreement."  *Jaftex Corp. v. AETNA Casualty and Surety Co.*, 617 F.2d 1062, 1063 (4th Cir. 1980).  If the agreement remains ambiguous after resorting to extrinsic evidence, then the "maxims of construction" should be used to resolve the ambiguity.  *See General Elec. Capitol Corp. v. Union Corp. Fin. Group Inc.*, No. 04-1467, 2005 U.S. App. LEXIS 14896, at *7 (4th Cir. Jul. 21, 2005) (unpublished) (citing *Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 43 P. 3d 1187, 1190 (Or. App. 2002).  The ultimate question is the intention of the parties.  *See Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979).

<u>IV.  Conclusion</u>

For the reasons stated above, defendant's Motion for Summary Judgment is **DENIED** and the matter is **REMANDED** to NOAA for reconsideration in accordance with this Opinion.

The Clerk is hereby **DIRECTED** to forward a copy of this Order and Opinion to all counsel of record.

**IT IS SO ORDERED.**

```
_____/s/_____
     Walter D. Kelley, Jr.
  UNITED STATES DISTRICT JUDGE
```

Norfolk, Virginia
September 30, 2005